# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

————————————

## No. 201600230

————————————

## UNITED STATES OF AMERICA
Appellee

v.

## FRANK A. DELLACAMERA III
Staff Sergeant (E-6), U.S. Marine Corps
Appellant

————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Lieutenant Colonel Eugene H. Robinson, Jr., USMC.
Convening Authority: Commanding General, Marine Corps
Installations Pacific, Okinawa, Japan
Staff Judge Advocate's Recommendation: Lieutenant Colonel Eric J.
Peterson, USMC.
For Appellant: Lieutenant Colonel Richard A. Viczorek, USMCR.
For Appellee: Major Cory A. Carver, USMC; Lieutenant Megan P.
Marinos, JAGC, USN.

————————————

Decided 30 March 2017

————————————

Before CAMPBELL, RUGH, and HUTCHISON, *Appellate Military Judges*

————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

————————————

CAMPBELL, Senior Judge:

At an uncontested general court-martial, a military judge convicted the appellant of attempted sexual assault of a child, attempted sexual abuse of a child, attempted production of child pornography, absence without leave, indecent exposure, and soliciting production and distribution of child pornography—violations of Articles 80, 86, 120c, and 134, Uniform Code of

Military Justice (UCMJ), 10 U.S.C. §§ 880, 886, 920c, and 934 (2012). The military judge sentenced the appellant to 48 months' confinement, reduction to pay grade E-1, a dishonorable discharge, and a reprimand. The convening authority (CA) approved the adjudged 48 months' confinement, reduction to pay grade E-1, and dishonorable discharge. In accordance with a pretrial agreement, the CA suspended all confinement in excess of 14 months.

The appellant raises three assignments of error (AOEs): 1) a dishonorable discharge is not mandatory for an Article 80, UCMJ, conviction involving an attempted violation of Article 120b(b), UCMJ; 2) the military judge abused his discretion in accepting the appellant's guilty pleas to Charge IV and its sole specification—solicitation of production and distribution of child pornography in violation of Article 134, UCMJ; and 3) the military judge abused his discretion in accepting the appellant's guilty pleas to Charge I, Specification 2—attempted sexual abuse of a child in violation of Article 80, UCMJ—and Charge III and its sole specification—indecent exposure in violation of Article 120c, UCMJ.[1]

We disagree with the first and second AOEs but agree, in part, with the third. In accordance with our holding in *United States v. Uriostegui*, 75 M.J. 857 (N-M. Ct. Crim. App. 2016), we find the appellant's guilty plea to indecent exposure improvident, set aside that conviction, and analyze for sentence reassessment below. Ultimately, we conclude the remaining findings and sentence are correct in law and fact and that no error materially prejudicial to the appellant's substantial rights remains. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

The appellant was a Military Policeman stationed in Okinawa, Japan. On 6 January 2016, he communicated through a web-based instant messaging application with an individual he believed to be a 14-year-old girl, whose screen name was "lizzdezz." Despite her apparent age, the appellant used sexually explicit language, sent a digital image of another man's exposed penis to her, and sent an image of his own naked torso and partially exposed penis to her. He suggested they meet to engage in oral and vaginal sex, and requested that she send him nude, sexually explicit photographs of herself.

In fact, "lizzdezz" was the on-line persona of an undercover Naval Criminal Investigative Service (NCIS) special agent. "Lizzdezz" repeatedly refused to provide or take any nude photographs for the appellant, but she agreed the appellant could photograph her when they met in person that

---

[1] The AOEs are renumbered from their order in the appellant's brief.

afternoon. The appellant then left his Camp Foster office, during normal business hours, and drove his personal vehicle to Kadena Air Base, where he expected to visit the 14-year-old girl's home. He was apprehended instead.

## II. DISCUSSION

### A. Dishonorable discharge

Having resolved this issue in *United States v. Henegar*, 75 M.J. 772 (N-M. Ct. Crim. App. 2016), *rev. denied*, 2016 CAAF LEXIS 988 (C.A.A.F. 2016), we summarily reject the appellant's first AOE. *United States v. Clifton*, 35 M.J. 79, 81 (C.M.A. 1992).

### B. Solicitation of child pornography

The appellant now challenges his guilty plea to Charge IV and its sole specification.[2] He argues that because "the person [he] was soliciting these photographs from was actually an adult undercover NCIS agent," it was "*a legal impossibility*" for his request to actually produce child pornography, since "the photos would not have involved a minor" had the agent complied.[3]

We review a military judge's acceptance of a guilty plea for an abuse of discretion, reversing only if the "record shows a substantial basis in law or fact for questioning the plea." *United States v. Moon*, 73 M.J. 382, 386 (C.A.A.F. 2014) (citation omitted).

Questions of law arising from a guilty plea, including whether there is a potential defense of impossibility to the elements of an inchoate offense, are reviewed *de novo. See United States v. Roeseler*, 55 M.J. 286, 290 (C.A.A.F. 2001) (considering the appellant's argument that "the military judge erred by failing to explain the defense of impossibility" before he pleaded guilty to attempted conspiracy to commit murder).[4]

---

[2] That the appellant "did wrongfully solicit the production and distribution of child pornography, by requesting an individual, who [the appellant] believed had not attained the age of sixteen years, to take photographs of her genitalia and to send said photographs to [him], and that said conduct was to the prejudice of good order and discipline in the armed forces and was of a nature to bring discredit upon the armed forces." Charge Sheet.

[3] Appellant's Brief of 12 Oct 2016 at 8, 18 (emphasis added).

[4] *See also United States v. Colon*, No. NMCCA 201500385, 2016 CCA LEXIS 257, at \*1-3, unpublished op. (N-M. Ct. Crim. App. 26 Apr 2016) (per curiam) (reviewing the providence of Colon's plea to "one specification of attempted sexual assault of a child and two specifications of attempted sexual abuse of a child" *de novo*, in light of his claim that "it was impossible for him to commit the underlying offense since his intended minor victim was not a minor but an adult law enforcement agent").

In *United States v. Thomas,* our superior court stated, "the elements of a criminal attempt are [still] present," notwithstanding the presence of either an "impossibility in fact"[5] or a "legal impossibility."[6] 32 C.M.R. 278, 283 (C.M.A. 1962).[7] Consequently, it later affirmed an appellant's conviction for attempted conspiracy where he had agreed to assist in the murder of two named individuals who were, unbeknownst to the appellant, fictitious. *Roeseler*, 55 M.J. at 287. "'Our general rule is that an accused should be treated in accordance with the facts as he or she supposed them to be.'" *Id.* at 291 (quoting *United States v. Riddle*, 44 M.J. 282, 286 (C.A.A.F. 1996)) (additional citation omitted).

Courts have treated solicitation and impossibility similarly. Soliciting another to commit an offense requires "[t]hat the accused solicited or advised a certain person or persons to commit a certain offense under the code" with "the intent that the offense actually be committed[.]" MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), PART IV, ¶ 105b. "[N]o legal authority . . . indicates that one may not be convicted of soliciting an undercover agent to commit an offense." *United States v. Cababa*, No. No. 9901417, 2004 CCA LEXIS 235, at *12, unpublished op., (N-M. Ct. Crim. App. 7 Oct 2004). While the solicitation "recipient must be capable of committing a separate criminal offense prohibited by the UCMJ[,]" the criminal act of "solicitation appears to involve nothing more than making a nefarious request or suggestion[.]" *United States v. Ashworth*, No. 201500028, 2015 CCA LEXIS 373, at *4, unpublished op. (N-M. Ct. Crim. App. 3 Sep 2015) (per curiam).

Analyzing solicitation and impossibility outside of the UCMJ context, the Supreme Court has stated, "an Internet user who solicits child pornography

---

[5] Where "the intended substantive crime is impossible of accomplishment" only "because of some physical impossibility unknown to the accused"—for instance where one "attempt[s] to steal from an empty pocket." *Thomas*, 32 C.M.R. at 283-84. "*All courts are in agreement* that what is usually referred to as '*factual impossibility*' is no defense to a charge of attempt." *United States v. Williams*, 553 U.S. 285, 300 (2008) (emphasis added) (citation and internal quotation marks omitted).

[6] Where "the intended act is," unbeknownst to the accused, "not criminal" *Thomas*, 32 C.M.R. at 283. One state, for instance, accepted a legal impossibility defense where "[a] person accept[ed] goods which he believed to have been stolen, but which were not 'stolen' goods." *Id.* (citing *People v. Jaffe*, 185 N.Y. 497 (1906)).

[7] *See also Roeseler*, 55 M.J. at 291 ("In military justice, impossibility—*whether of law or fact*—is no defense in a prosecution for conspiracy or attempt.") (emphasis added) (citation and internal quotation marks omitted).

from an undercover agent violates [18 U.S.C. § 2252A(a)(3)(B)],[8] even if the officer possesses no child pornography." *United States v. Williams*, 553 U.S. 285, 293 (2008). The Court noted that "[a]s with other inchoate crimes—attempt and conspiracy, for example—impossibility of completing the crime because the facts were not as the defendant believed is not a defense" to "solicitation made unlawful by the Act." *Williams*, 553 U.S. at 300.

In *People v. Thousand,* the Michigan Supreme Court similarly rejected Thousand's claim "that it was 'legally impossible' for him to have committed" solicitation of a minor for sexual acts, where unbeknownst to him he had actually solicited an adult undercover law enforcement officer. 465 Mich. 149, 166-69 (2001) (finding the lower court "erred to the extent that it relied on the doctrine of 'impossibility' . . . [to] dismiss[] the solicitation charge"). It reached this conclusion even though "the underlying form of third-degree criminal sexual conduct charged, [MICH. COMP. LAWS § 750.520d(1)(a)], required the existence of a person under the age of sixteen." *Id.* at 167. Again emphasizing that "the concept of 'impossibility' has no role in the analysis of this issue," the *Thousand* court ultimately dismissed the solicitation of a minor charge for a different reason: the requested act of having sex with the defendant would not be "criminal sexual conduct" on the presumed fourteen-year-old's part. *Id.* at 168-69 (also noting "the requested acts might well have constituted a crime on the defendant's part," but "the prosecution was required to present evidence that defendant requested that *another person* perform a criminal act.").[9]

The ultimately dispositive issue in *Thousand* was also recognized by the Court of Appeals for the Armed Forces (CAAF) in its *United States v. Sutton* holding that a specification alleging Sutton solicited "his step-daughter to commit the offense of indecent liberties with a child by asking her to lift her shirt to show him her breasts[,]" failed to state an offense. 68 M.J. 455, 455, 459 (C.A.A.F. 2010) (noting that because the "elements of indecent liberties with a child clearly contemplate[] two actors," the step-daughter could not have "commit[ed] the offense of indecent liberties with a child on herself"—thus Sutton could not have solicited her to commit indecent liberties). Though our court has characterized this type of defect in the solicitation specification

---

[8] Authorizing the conviction of one who "solicits . . . including by computer . . . a visual depiction of an actual minor engaging in sexually explicit conduct[.]"

[9] The *Thousand* court noted that it would have dismissed the solicitation charge, regardless of "whether we look[ed] at this case as [Thousand] asking [the fictional] fourteen-year-old 'Bekka' to engage in sexual intercourse with him," or as Thousand asking the undercover officer to have sexual intercourse with him since in neither case would the other person be engaged in a criminal act. 45 Mich. at 169.

as a "practical impossibility,"[10] we have never viewed *Sutton* as having imported defenses of legal or factual impossibility into the law of solicitation.

During the appellant's providence inquiry in this case, he explained he was guilty of soliciting production and distribution of child pornography because he believed he was communicating with a girl less than 16 years old when he asked her to create and send him sexually explicit photographs of herself.[11] He has provided no authority which compels us to recognize a defense of impossibility to his soliciting someone who, unbeknownst to him, was not a minor. The appellant "ma[de] a nefarious request," *Ashworth*, 2015 CCA LEXIS 373, at *4, to a party he believed to be a 14-year-old girl, seriously intending that she create and send him sexually explicit photographs—a crime under the UCMJ, as a minor can create child pornography, even by depicting only himself or herself.

Guided principally by the CAAF's directive to treat the appellant "in accordance with the facts as he . . . supposed them to be," *Roeseler*, 55 M.J. at 291 (citations and internal quotation marks omitted); the Supreme Court's guidance that factual impossibility is not a defense for solicitation to produce child pornography under the United States Code; and the Michigan Supreme Court's persuasive authority holding that legal impossibility does not apply to solicitation of a sex act from a minor where the other party was, unbeknownst to the solicitor, not actually a minor; we hold the appellant's mistaken notion regarding the identity of the party he solicited affords him no defense in military jurisprudence. Even though the adult undercover agent could produce no child pornography by photographing herself, the appellant nonetheless engaged in an *act of seriously requesting* production and distribution of child pornography. Thus, we find no substantial basis in law or fact for questioning his guilty plea to Charge IV and its sole specification.

## C. Attempted sexual abuse of a child

The appellant also challenges the providence of his plea to Charge I, Specification 2.[12] He argues the "photo of his torso and partially exposed

---

[10] *Ashworth*, 2015 CCA LEXIS 373, at *13 (noting that "[u]nlike the solicitation to engage in indecent liberties in *Sutton*, there is no element of 18 U.S.C. § 2252A that poses a practical impossibility in this case").

[11] *See also* Prosecution Exhibit 1 at 14 (noting that the appellant requested she "send him pictures of her in the shower; some 'sexy' images; and images of her 'naked, maybe playing with herself a little'").

[12] That the appellant did "attempt sexual abuse of a child . . . by committing a lewd act, to wit: intentionally exposing his genitalia with the intent to arouse or gratify the sexual desire of a person." Charge Sheet.

penis" that he sent to the individual he believed to be a 14-year-old girl "was not indecent under the circumstances[.]"[13] The appellant cites *United States v. Johnston*, in which we noted that "minority of age does not, by itself, equate to indecency" of exposure. 75 M.J. 563, 568 (N-M. Ct. Crim. App. 2016).

However, this specification alleges the attempted commission of a "lewd act" rather than an indecent exposure. A lewd act can include "intentionally exposing one's genitalia . . . to a child by any means." Art. 120b(c)(5)(B), UCMJ. Unlike the separate Article 120c(c) indecent exposure offense—which *additionally* requires that the intentional exposure be committed "in an indecent manner"—Article 120b(h)(5)(B), UCMJ, requires only that one's intentional exposure be done "with an intent to abuse, humiliate, or degrade any person, or to arouse or gratify the sexual desire of any person[.]"

Here, the military judge defined "lewd act" consistently with the statute, without any requirement that the conduct be indecent.[14] The military judge then established that the appellant sent the individual he believed to be a 14-year-old girl a photograph of his nude penis. When asked if he "did this act with the intent to arouse or gratify [his] own sexual desire," the appellant admitted that he did.[15] Consequently, and in accordance with our holding in *Uriostegui*, 75 M.J. at 865, we find no substantial basis in law or fact for questioning the appellant's guilty plea to the attempted sexual abuse of a child by committing a lewd act.

**D. Indecent exposure**

Having carefully considered the record of trial and the parties' submissions, we find no cause to distinguish the appellant's case from our other holding in *Uriostegui*, that Congress did not intend to punish the electronic transmission of an indecent photograph or digital image to an adult under Article 120c(c), UCMJ. 75 M.J. at 865. Thus, we find a substantial basis in law to question the providence of the appellant's plea to indecent exposure. Additionally, we find the appellant's actions would be legally insufficient to support an indecent exposure conviction if a rehearing was authorized, given the specific facts and circumstances in this case.

---

[13] Appellant's Brief at 15. The appellant correctly argues that his sending the image of another man's erect penis to an individual he believed to be a 14-year-old girl does not support the providence of his plea to *this* attempted violation of Article 120b(c), UCMJ, specification, as drafted—alleging the commission of "a lewd act, to wit: intentionally exposing *his* genitalia." Charge Sheet (emphasis added).

[14] Record at 20; 31-32.

[15] *Id.* at 32.

Consequently, we set aside the indecent exposure conviction and consider the need for sentence reassessment.

**E. Sentence reassessment**

Courts of Criminal Appeals (CCAs) can often "modify sentences 'more expeditiously, more intelligently, and more fairly' than a new court-martial[.]" *United States v. Winckelmann*, 73 M.J. 11, 15 (C.A.A.F. 2013) (quoting *Jackson v. Taylor*, 353 U.S. 569, 580 (1957)). In such cases, CCAs "act with broad discretion when reassessing sentences." *Id.* We consider the following "illustrative, but not dispositive, points of analysis . . . when determining whether to reassess a sentence or order a rehearing" in this case:

(1) Whether there has been a dramatic change in the penalty landscape or exposure.

(2) Whether sentencing was by members or a military judge alone.

(3) Whether the nature of the remaining offenses captures the gravamen of criminal conduct included within the original offenses and whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses.

(4) Whether the remaining offenses are of the type with which appellate judges should have the experience and familiarity to reliably determine what sentence would have been imposed at trial.

*Winckelmann*, 73 M.J. at 15-16. Reassessing a sentence is appropriate only if we are able to reliably determine that, absent the error, the sentence would have been at least of a certain magnitude. *United States v. Harris*, 53 M.J. 86, 88 (C.A.A.F. 2000). A reassessed sentence must not only "be purged of prejudicial error [but] also must be 'appropriate' for the offense involved." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986).

Under all the circumstances presented, we find that we can reassess the sentence, and it is appropriate for us to do so. First, the penalty landscape has not changed dramatically. The maximum punishment for indecent exposure includes 12 months' confinement and a dishonorable discharge. Setting aside the indecent exposure conviction only reduces the appellant's maximum confinement from 76 to 75 years. Second, the appellant elected sentencing by a military judge, and we are more likely to be certain of what sentence the military judge, as opposed to members, would have imposed. Third, we have extensive experience and familiarity with the remaining offenses, as none present a novel issue in aggravation. Finally, the remaining offenses capture the gravamen of the criminal conduct at issue, and all the evidence remains admissible. Indeed, the appellant's conviction for the second attempted sexual abuse of a child specification relied on the same facts used to convict him of indecent exposure. Although charged as both

attempted sexual abuse of a child and as indecent exposure, in effect, the appellant was sentenced based on evidence of a single incident of sending a picture of his genitalia.

Taking these facts as a whole, we can confidently and reliably determine that, absent the error, the military judge would have sentenced the appellant to at least confinement for 48 months, reduction to pay grade E-1, and a dishonorable discharge. We also find that sentence to be an appropriate punishment for the modified convictions and this offender—thus satisfying the requirement for a reassessed sentence both purged of error and appropriate. *Sales*, 22 M.J. at 308.

### III. CONCLUSION

The findings of guilty to Charge III and its sole specification are set aside. The remaining findings and the sentence are affirmed.

Judge RUGH and Judge HUTCHISON concur.

For the Court

R.H. TROIDL
Clerk of Court

9